**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**AUSTIN JAY BURNS** **PLAINTIFF**

**v.** **Civil No. 12-5164**

**DEPUTY McELROY; CAPTAIN CHRIS SPARKS;**
**SERGEANT MARTINEZ; DEPUTY WEIBERT;**
**SHERIFF KEITH FERGUSON; and**
**DEPUTY SIMER** **DEFENDANTS**

**O R D E R**

Now on this 11th day of September 2013, comes on for consideration the **Report and Recommendation of the Magistrate Judge** (document #19) and the parties' responses thereto. The Court, being well and sufficiently advised, finds and orders as follows:

**Background**

1. This is an action pursuant to 42 U.S.C. § 1983, which plaintiff Austin Burns, acting pro se, caused to be filed on July 26, 2012. In his initial Complaint, Mr. Burns named Deputy McElroy, Captain Chris Sparks, Sergeant Martinez, Deputy Weibert, and the Benton County Detention Center as defendants, and alleged

* that Deputy McElroy subjected him to mental abuse and repeated threats;

* that Deputy McElroy and Deputy Weibert subjected him to unsanitary conditions of confinement;

* that Sergeant Martinez threatened him on July 3, 2012; and

* that his mail was improperly withheld.

The Court substituted Sheriff Keith Ferguson as a defendant in place of the Benton County Detention Center.

2. Mr. Burns filed a supplement on August 1, 2012, in which he alleged

* that evidence was planted on him; and

* that, while Mr. Burns was on suicide watch, Deputy Simer wanted to put him in a room with a broken stool with sharp metal edges.

The Court treated the supplement as an amendment to the Complaint and directed the Clerk to add Deputy Simer as a defendant.

3. On February 5, 2013, the defendants filed a motion to dismiss the Complaint, arguing that Deputy Simer and Sheriff Ferguson were improperly added as defendants and that Mr. Burns had stated no plausible official-capacity or individual-capacity claims. They further claimed the protection of qualified immunity on all individual-capacity claims.

4. The Magistrate Judge issued the present Report and Recommendation, concluding that the following claims should be dismissed:

* all claims against Sergeant Martinez and Deputy Weibert;

* all conditions of confinement claims stemming from the alleged unsanitary conditions;

* all claims stemming from interference with Mr. Burns'

mail; and

* all claims based on planted evidence.

The Magistrate Judge concluded that the following claims should remain for further consideration:

* the claim against Deputy McElroy based on his alleged repeated threatening conduct;

* the failure-to-protect claims against Captain Sparks and Sheriff Ferguson; and

* the claim that Deputy Simer exhibited deliberate indifference to a known risk of suicide on Mr. Burns' behalf.

5. Mr. Burns responded to the Report and Recommendations, indicating no objections. The defendants object to the recommended denial of their motion to dismiss and qualified-immunity defense.

**Standard for Motion to Dismiss**

6. Pursuant to **Fed. R. Civ. P. 8(a)**, a complaint must contain, among other things, a short and plain statement of the claim showing that the plaintiff is entitled to relief. To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts stating a claim that is plausible on its face and will allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. **Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).**

For purposes of deciding a motion to dismiss, the Court takes the alleged facts as true, construing all reasonable inferences

arising from the complaint in the light most favorable to the plaintiff. **Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).**

**Addition of Deputy Simer as a Defendant**

7. The defendants first object to the addition of Deputy Simer, arguing that Mr. Burns' failure to list Deputy Simer as a defendant in his initial Complaint is clear evidence that he did not intend to sue Deputy Simer.

8. It is well settled that a document filed by a pro se litigant is to be liberally construed and that a pro se complaint must be held to less stringent standards than a pleading drafted by lawyers. **Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).**

9. The document filed by Mr. Burns on August 1, 2012 -- which was docketed as a "Supplement" -- contained a handwritten note stating that Mr. Burns wanted to add certain information to his file and complaining that Deputy Simer disregarded his status on suicide watch. Attached were a grievance form and a disciplinary action form -- both dated July 24, 2012 -- relevant to Mr. Burns' allegation that Deputy Simer tried to place him in a room with an unsafe, broken stool, despite knowing that Mr. Burns was at risk of suicide.

The Clerk's date stamp on the envelope containing the initial Complaint appears to indicate that it was received on July 23, 2012, the day before the incident involving the broken stool.

Thus, Mr. Burns could not have included that incident as the basis for a claim in his initial Complaint. The only way for Mr. Burns to have added the claim to this lawsuit was to amend the Complaint. Liberally construing Mr. Burns' August 1, 2012 filing -- as the Court is required to do -- the Court finds that Mr. Burns did just that. Therefore, Deputy Simer was properly added as a defendant.

**Addition of Sheriff Ferguson as a Defendant**

10. Next, the defendants argue that Sheriff Ferguson should not have been substituted in place of the Benton County Detention Center and that it is unclear in what capacity Sheriff Ferguson is named. They argue that 28 U.S.C. § 1915A, which requires pre-docketing screening of prisoner complaints, allows the Court to identify cognizable claims or to dismiss the complaint -- but not to substitute a party.

11. A county jail, such as the Benton County Detention Center, is merely a building; it is not an entity subject to suit under 42 U.S.C. § 1983. **Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003)**. Rather, under Arkansas law, the sheriff is charged with the care and custody of county prisoners. **Ark. Code Ann. § 12-41-502.**

Where a complaint against a sheriff does not specify the capacity in which he is sued, the court construes the suit as one against the sheriff in his official capacity. **See Johnson v.**

**Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).** A claim against a sheriff in his official capacity is the equivalent of a claim against his county employer. **Id.**

12. As no allegations in the Complaint were specifically directed against Sheriff Ferguson personally, he could only be considered as a defendant in his official capacity.

However, despite the liberal construction of Mr. Burns' pleadings and the logical conclusions drawn therefrom, substitution of the sheriff in place of the Benton County Detention Center is not warranted in this case. Mr. Burns has attempted to allege claims against the other named defendants in their official capacities -- which, as discussed below, is equivalent to suing the county itself. **See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).** Therefore, naming Sheriff Ferguson in order to address the claim against the county is unnecessary.

Moreover, the Eighth Circuit Court of Appeals has indicated that the dismissal of a non-suable entity named in a § 1983 suit is appropriate where the plaintiff may refile or amend his complaint to name a suable entity or individual. **See De La Garza v. Kandiyohi County Jail, 18 Fed. Appx. 436, 437, 2001 WL 987542 (8th Cir. 2001) (unpublished per curiam).**

13. Accordingly, Sheriff Ferguson will be dismissed as a defendant in this case. Because the Benton County Detention Center

is not a suable entity, it is likewise dismissed.

**Official-Capacity Claims**

14. The defendants further argue that all claims against them in their official capacities should be dismissed because Mr. Burns failed to allege any unconstitutional policy or custom that was the moving force in violating his rights.

15. As noted above, a suit against a public officer in his official capacity is "functionally equivalent to a suit against the employing governmental entity." **Veatch, 627 F.3d at 1257.** A governmental entity can be liable under § 1983 only if the plaintiff shows that the entity maintained a policy or custom that caused the plaintiff to be deprived of a federal right. **Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013).**

16. In his Complaint, Mr. Burns makes no statement regarding any policy employed by the detention center. However, in the grievance attached to the supplement to the Complaint, Mr. Burns states that he is "tired of being treated like an animal by the [deputies]" and asserts, "Nothing is ever done about it because it's my word against theirs. That's what I am told every time I put a grievance in." (Supplement, p. 4, document #5).[1]

Liberally construing the Complaint in its entirety, the Court agrees with the Magistrate Judge that these allegations amount to

[1]As the docket sheet now reflects, page 4 of the Supplement -- which is the back side of page 3 -- was inadvertently omitted at the time the document was scanned into the system. The error has now been corrected.

a claim that Benton County had a custom of failing to fully investigate -- or to take seriously -- an inmate's complaints of threats by detention center employees.[2]

17. Notwithstanding the above, and as explained in the following section, the official-capacity claims fail because the facts asserted do not demonstrate that the alleged threats violated Mr. Burns' constitutional rights.

**Individual Capacity Claims/Qualified Immunity**

18. The parties do not object to the Magistrate Judge's recommendation that the claims against Sergeant Martinez and Deputy Weibert should be dismissed, and the Court agrees that their dismissal is proper. However, the defendants argue that Mr. Burns has failed to allege actionable claims against Deputy McElroy, Captain Sparks, and Deputy Simer, and that those defendants are protected from this suit by qualified immunity.

19. Qualified immunity is a doctrine that has evolved to protect government officials from liability for civil damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).** The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the

[2]There has been no argument regarding any official-capacity claims related to Deputy Simer's alleged deliberate indifference to a known risk of suicide, nor did the Magistrate Judge conclude that any exist.

plainly incompetent or those who knowingly violate the law." **Messerschmidt v. Millender, 132 S.Ct. 1235, 1244 (2012).** Whether qualified immunity exists in a given situation is a question of law, not fact, **McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005),** although there may be disputed issues of fact about what that situation is.

**Deputy McElroy**

20. Regarding Deputy McElroy, the defendants contend that the claims against him amount to nothing more than verbal threats, which do not constitute a § 1983 claim. They also argue that Mr. Burns failed to allege any specific statements made by Deputy McElroy that he deemed threatening.

21. In the usual case, mere verbal threats and name calling do not violate a constitutional right. **McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993).** However, the Eighth Circuit has made an exception to this rule where a public official engaged in a "brutal" and "wanton act of cruelty," even though there was no physical injury. **Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (holding that the plaintiff stated a claim where he alleged that an officer used a racial epithet and threatened his life at gunpoint).** "[A] prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his allegedly bigoted custodians." **Id.**

However, where the alleged conduct failed to rise to that

egregious level, the Eighth Circuit has held that a verbal threat is not actionable under § 1983. **Hopson v. Fredericksen, 961 F.2d 1374, 1379 (8th Cir. 1992).** In **Hopson**, the plaintiff alleged that he was placed alone in the back seat of a police car and that, when he refused to answer any questions, an officer uttered a racial slur and threatened to "knock [his] remaining teeth out of his mouth." **Id. at 1378.** The Eighth Circuit reasoned that -- because the officer never threatened to kill Hopson and never brandished a weapon or made any type of physical gesture toward him -- the officer's conduct failed to rise to the level of a constitutional violation. **Id. at 1378-79.**

The Eighth Circuit used similar reasoning in **Irving v. Dormire, 519 F.3d 441 (8th Cir. 2008)**, where it held that repeated death threats made by a prison guard against a prisoner violated the Eighth Amendment. There, the court compared Irving's allegations to the facts in both **Burton** and **Hopson** and found them to be more similar to **Burton** because the guard subjected Irving to the fear of death. **Irving, 519 F.3d at 449.**

22. With respect to Deputy McElroy, Mr. Burns alleged that the deputy would "remind me, every time he sees me, that he has and CAN cause me bodily harm at any given time." (Complaint, p. 7, document #1 (emphasis in original)). He also alleged that, in response to Mr. Burns' upraised arms when he requested toilet paper, Deputy McElroy stated that he was going to tackle him.

(Complaint, pp. 10-11, document #1). Further, Mr. Burns claimed that, on July 24, 2012, Deputy McElroy called him a "dipshit." (Supplement, p. 3, document #5).

As a result of these allegedly ongoing threats, Mr. Burns claimed to have suffered mental anguish and nightmares about the named guards (Complaint, pp. 5, 8, document #1), as well as "the shakes" every time he heard his door open (Complaint, p. 8, document #1). He explained that he believes Deputy McElroy has a personal vendetta against him, because "[e]very time I talk to him, he threatens me." (Complaint, p. 11, document #1). He also stated that he did not feel safe in the jail around this staff. (Complaint, p. 15, document #1).

23. Contrary to the defendants' argument, the Complaint does include specific statements by Deputy McElroy -- which are noted above -- that Mr. Burns claimed were threats.

However, the Court does not find that those threats were the kind of "brutal" and "wanton acts of cruelty" that the Eighth Circuit has held to violate a prisoner's constitutional rights. Mr. Burns does not allege that Deputy McElroy ever threatened his life or even made a physical gesture to indicate he intended to carry out his threats. While the Court does not condone the alleged conduct, it cannot say that the allegations against Deputy McElroy -- even if true -- state an actionable claim under § 1983. Therefore, the claims against Deputy McElroy will be dismissed.

**Captain Sparks**

24. As to Captain Sparks, beyond listing his name as a defendant on the Complaint, Mr. Burns makes no mention of him in either his Complaint or Supplement. Thus, the Court finds that Mr. Burns has failed to state a claim against Captain Sparks for failure to protect.

25. Moreover, an Eighth Amendment violation based on failure to protect requires two things:

* first, that the conditions resulting from the failure to protect pose a substantial risk of serious harm to the inmate (an objective requirement); and

* second, that the subject prison official was deliberately indifferent to that substantial risk of serious harm (a subjective requirement).

**<u>Lenz v. Wade</u>, 490 F.3d 991, 995 (8th Cir. 2007).** The objective requirement is to ensure that the violation is sufficiently serious to amount to a deprivation of constitutional dimension. **<u>Jensen v. Clarke</u>, 94 F.3d 1191, 1194 (8th Cir. 1996).**

26. Because the facts set forth by Mr. Burns regarding verbal threats do not demonstrate a deprivation of his constitutional rights, there can be no claim against Captain Sparks under § 1983 for failure to protect from those threats.

**Deputy Simer**

27. Finally, the defendants argue that Mr. Burns failed to

state a claim against Deputy Simer for deliberate indifference of a known risk of suicide. They contend it is clear from the documents submitted that Mr. Burns was not actually placed in the room with the broken stool. They further argue that Mr. Burns failed to allege that Deputy Simer knew the stool was broken or that it had sharp, ragged edges.

28. The Eighth Amendment's prohibition of cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs. **Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006).** For these purposes, the risk of suicide by a prisoner is considered a serious medical need. **Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000).** The constitutional right of a prisoner to be protected from the known risks of suicide has been clearly established. **Luckert v. Dodge County, 684 F.3d 808, 817 (8th Cir. 2012) (quoting Yellow Horse v. Pennington County, 225 F.3d 923, 927 (8th Cir. 2000)).**

29. Here Mr. Burns complains that, while he was on suicide watch, Deputy Simer "wanted to put me in a room with sharp metal edges from this stool that was broke." (Supplement, p. 1, document #5). Contrary to the defendants' assertion, it is not clear whether Mr. Burns was actually placed in the room with the broken stool. The accompanying disciplinary action form indicates that Mr. Burns did not want to go "back to his cell" because the stool was broken. (Supplement, p. 2, document #5). Thus, it can be

inferred that Mr. Burns had been placed inside that cell.

Further, although Mr. Burns does not explicitly state that Deputy Simer knew about the condition of the stool, this too can be inferred from the stated circumstances. Again, the Court is required to liberally construe Mr. Burns' submissions. **See Erickson, 551 U.S. at 94.**

30. The Court agrees with the Magistrate Judge that Mr. Burns has adequately stated a claim of deliberate indifference against Deputy Simer in his individual capacity. Because the law in this area is clearly established, the Court finds that Deputy Simer is not entitled to qualified immunity.

**Conclusion**

31. For the reasons discussed herein, the Court finds that the defendants' motion to dismiss will be granted in part and denied in part. Specifically, the following defendants -- and all claims against them -- will be dismissed:

* Deputy McElroy
* Captain Chris Sparks
* Sergeant Martinez
* Deputy Weibert; and
* Sheriff Keith Ferguson.

32. This leaves for further proceedings the claim against Deputy Simer, in his individual capacity, for deliberate indifference to a known risk of suicide.

**IT IS THEREFORE ORDERED** that the **Report and Recommendation of the Magistrate Judge** (document #19) is **modified** as stated herein.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, the defendants' **Motion to Dismiss** (document #16) is hereby **granted in part** and **denied in part.** Separate defendants Deputy McElroy, Captain Chris Sparks, Sergeant Martinez, Deputy Weibert, and Sheriff Keith Ferguson are hereby **dismissed** from this action.

**IT IS SO ORDERED.**

**/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**